John Gard for Erika Rincon de Garcia, Petitioner. The question as to whether Erika Rincon may be subject to reinstatement today is not presently ripe for review until all issues pending en banc review by this Court in Gonzales v. Department of Homeland Security have been resolved. But, arguendo, we will proceed with the understanding that reinstatement of Petitioner's expedited removal order could not be prevented due to having filed a waiver for the prior expedited removal order and having been, having had that order reinstated nonetheless, unless the Court decides otherwise during en banc review. However, this Petitioner argues that her expedited removal order was constitutionally affirmed, infirm, egregiously so, from having been forced to sign a written confession. And the question is, do we have jurisdiction to hear such a claim? We do. We do. Gonzales didn't take away jurisdiction. Orales-Squierdo limits the jurisdiction on these reinstatements. On the reinstatement, Menachtee attacked the initial claim. Orales-Squierdo did mention, in deference to the Supreme Court's decision in August I thought it was the reinstatement that you're complaining about. We're complaining about the reinstatement of the underlying order. The underlying order being the fruit of the poisonous tree that cannot be overlooked. Oh, where? Oh, okay. So you're saying that somehow because there's a fruit of the poisonous tree concept here, that the limitations on jurisdiction that would otherwise apply do not, under Squierdo, do not apply. That's necessary, Your Honor, to avoid any judicial review on an expedited removal order where an uneducated young girl, unable to speak English, was stuck in Mexico and unable to pursue any claim. It may be necessary for you to win the case, but the question is whether the law permits it. The law does permit it, Your Honor, because the law under Webster v. Doe … Actually, where's the exception? Where's the case that holds that position that you're asserting? Webster v. Doe and then all of the detention-related cases of the vitis looks at the need to have some form of judicial review. And this woman had none. And if I might say, AILA, the district court case that was filed immediately after the implementation of IHRA-IHRA, this case held that the 60-day window was sufficient review and denied AILA for lack of third-party standing, also noting that all people who brought the claim had no right claim, but, and if the Court will proceed, I'll respond. Let me go back a minute to what is her underlying claim here, the due process claim? Her underlying claim that she gave no voluntary confession of false claim to U.S. citizenship, which will forever bar her from immigrating to the United States when she could otherwise be eligible to consular process in January of 2014. And what is the evidence that she has – she asserted any evidence to that? There is an affidavit on file taken by Mr. Bill Scupper, a co-counsel, while she was in detention, saying she basically had no idea what was going on throughout the entire proceedings, very little was explained to her, and she was mass-produced in her initial San Ysidro expedited removal order, whereby she was one of many people in a room. The affidavit, wasn't it that she was confused or somehow didn't – that she was confused? Is that – is that the question? She was confused and didn't understand what was being said to her and didn't know what she was signing because it was in English. Uh-huh. But she nowhere denied, did she, that when she first presented herself, she presented herself as a citizen? That's not in any affidavit. She does not remember exactly what transpired. She was one of many people online. So now we're talking about two different incidents. We're talking about when she first appeared, and – and she says – and that's when the incident – the report refers to her – the statement refers to her as having said she – she was asserting citizenship and that she was born in Los Angeles. That first occasion. And then the second one is when he took the – later took the statement to that effect. And is there a position that she was confused on both occasions? She was – there's a position she was confused on both occasions and never intentionally said anything. But she was made to sign statements in English while under detention and would not be released until she signed them. Okay. And – but she never has said that when she first appeared – there's no affidavit, as I understand it, that when she first appeared, she did not say that she was a – a citizen. Your Honor, she's saying she doesn't recollect what happened. There was a crowd online, and she really doesn't recall. She's standing online. There was a discourse, and she was given secondary, and a lot of people in the room. I can only – I'd have to go off the record, because I've hired a Board of Attorneys for it, and I know it happens. I'm just wondering, assuming one could ever overcome these rather insurmountable hurdles of jurisdiction, that – that she would ever even have a case because of, you know, that she could ever establish any – to any effect that she was – that there was anything improper about what was done. I mean, given the affidavit, which is extraordinarily clear. I've read that affidavit. Can you repeat that? I have read the – the statement that she gave to the officer, saying that she was – when she first presented herself for admission, she said she was a U.S. citizen and that she knew that it was a violation of law to do that. None of those statements, Your Honor, were in her writing, and none of them used her words. Oh, typed. They were typed, and she signed them. But she never had them translated in an adequate way. She didn't understand what she was signing. She was a young mother whose husband and child were in the United States. She was in detention, and she was – it was known very – it was known very clearly to her that she would not be released until she did sign them. That is intrinsically coercive, and that is her assertion. Okay. And that's the type of due process violation that can't escape review. To look at that 60 – Unless – unless the Federal law, unless the statute's prohibitive. We would argue that the Constitution's suspension clause and, as implicated in Gonzales v. Department of Homeland Security, which gave deference to Torres Garcia, but nowhere attacked areola areola in the ability to attack the underlying order. This has never been questioned, that you can't escape review over an – of an egregiously unconstitutional underlying order. That 60-day window would require her to have shown up at the border and to have foreseen what would happen to her. Meanwhile, the spotlight of public examination during that 60 days would certainly put on notice the type of culture that allows this type of government misactivity and would – and the fact that the 60 days is triggered by the production of either a law, a regulation, or some kind of a memorandum would allow a lot of unspoken, unwritten, rogue activity to go undetected. And we're not claiming a systemic challenge on the system – on this particular law. We're not claiming that at all. We're saying that the facts of this particular case are not given proper review by requiring a systemic challenge. Well, the ultimate relief that you could get, then, is what? Removal of the lifetime bar. Lifetime bar. That's the ultimate relief. I would hope that this Court would find that the proceedings that transpired arguably might be so egregious as to warrant transfer to district court under 2347b3, which is allowed. And how do we get around that one with – given the new Real ID Act, which says that district courts don't have jurisdiction? They still do, according to – excuse me. I have the case right here, Your Honor. Morgan. Morgan said that when it comes to evidentiary concerns, the court of appeals has no original jurisdiction, and under 2347b3, it authorizes transfer down to district court for an evidentiary hearing when? When a hearing was not required by law, as is the case with expedited removal, and a genuine material fact is presented, as is present before this Court today. Can I proceed? Gallo Alvarez v. Ashcroft was also the review of an underlying order that allowed transfer to district court for an evidentiary hearing. And interestingly enough, Morgan v. Gonzales, which I've just mentioned for the Court, 495 Federal 3rd, 1084 at page 1090, that was a review of a habeas case. That was implicating the Real ID Act was involved. The Real ID Act was in effect. But this Court well knows that it can't take evidence, or else this room would be much more full of people than it now is in any event. This case is highly distinguished also from Padilla v. Ashcroft, where no constitutional abrogation was being claimed by that Petitioner. In that case, there was a voluntary confession to attempted entry using false documents. Nor can this case at all be compared to the government's citation of Turl Gurel where, in that case, a woman with a bachelor's degree in English who confessed openly a false claim before an immigration judge under adversarial proceedings brought a constitutional challenge that was clearly spurious. In this case, there is no spurious constitutional challenge. There's something that is patently offensive to our laws, and we would presume to be patently and evidentially hearing to seek out the truth. I'm going to reserve closure. Thank you. We hear from the government. Thank you. May it please the Court. My name is Luis Perez, and I represent the government on this matter. Your Honors, citing directly to Morales Izquierdo and to the extent that petitioners are challenging the underlying expedite removal order in the context of a restatement proceeding, I would like to read from the embankment's decision in Morales Izquierdo on page 498. That starts with, while aliens have a right to a fair procedure, they have no constitutional right to force the government to re-adjudicate a final removal order by unlawfully re-entering the country. And then on the next page, it says, nothing in the due process clause gives him, Morales Izquierdo, the right to manufacture for himself a new opportunity to raise such a challenge. And that's incredibly important, Your Honor, because what is behind Morales Izquierdo is that an alien who illegally re-enters the United States cannot be in a better position constitutionally from one that stayed in his or her country. And that is without even going into the clear jurisdictional limitations of expedite removal that this Court recognized in Avedando Ramirez, which is cited in our brief, on page 818 of Avedando Ramirez, and discusses the five instances in Section 242 where Congress explicitly limited jurisdiction of expedite removal orders to habeas proceedings under 242E2, and where only three issues can be addressed on those habeas proceedings, whether the person is an alien, whether that person is subject to an expedite removal order, and to the extent that that person is claiming to be a lawful permanent resident or an asylee or a refugee, whether that person can establish that by a preponderance of the evidence. That limitation does not allow, and I'm citing now to 242E5, the scope of inquiry of that limited habeas jurisdiction. Clearly established by Congress, it's only limited as to the issue of whether the order was issued against an alien, but does not allow for consideration of eligibility for relief or to the underlying inadmissibility issue. Roberts. Well, let's assume that on the facts here, I guess the question I wanted to ask was, at what point – is there a point in this process at which she should have but couldn't – but she should have raised and could have raised, but for when, the ability to make this due process challenge? To the extent that she is making a claim which Petitioner's counsel already said that they're not making a systemic challenge to extra remediation. Right. I'm not making a systemic challenge that would be the kind of thing that you bring in Washington. Yeah. Correct. So it's an as-applied challenge that she was confused and she made these statements without proper interpretation, without understanding what she was doing. That's her claim. Unfortunately, no, Your Honor. There is no way to make – There's no way that she can actually raise that claim. Correct. The only – when Congress legislated extra removal, it only gave those aliens who have a fear of persecution or who claim to be lawful permanent residents to have further review. Right. And just take me back a little bit to the whole idea of a person who is seeking admission into the United States and the extent to which the due process clause would apply to such a person. Well, as the Supreme Court held in Messe, a person – and this Court has recognized in other cases discussed in Messe, there is the doctrine or the entry fiction, which essentially means that a person who has not entered the United States, the only due process that that person is allowed is that given by Congress. Which means it could be no process. It could be no process. But in this case, there is some process. And because there is no systemic challenge to the system, then we have to assume that that process is sufficient under the Fifth Amendment. Well, but the question I have is whether – the only ability to challenge the process is the systemic one. Correct. Correct. So that if there's an as-applied problem that comes up, then that is not – there's no permissible way to challenge that. Correct. But remember, we're talking about arriving aliens. Yeah, I know that. That's what went back to my earlier point. Correct. And that's the – because we're talking about arriving aliens, and the Supreme Court has recognized that arriving aliens are only allowed the process that Congress intended them for be allowed, there is no constitutional problem. They're basically saying whatever process you're allowed is at the grace of the legislature. Correct. As a grace of the sovereign who has the authority to decide who gets in to the United States. Well, she – you're treating her – you're saying that this is a generic argument. She's not a citizen. She's trying to get in, and that's kind of it, huh? Because she's not in. Correct. And so we just – she was married – she had married – she was married to a lawful permanent resident, and she had a, what, a citizen child? She had a citizen child. She left the country. But remember, when – at the time she left the country, she was present without admission. And at the time she left, she was not an OPR. This is not some – Right. I understand that. But didn't she have at least potentially some rights to – to obtain lawful status? No. At the time, she – No. No. No. If she had not left. That's – that's incredibly – you know, I don't want to speculate. But you see what's – I understand that. But, you know, it's very easy to make a – it's easy to understand the argument that she wasn't – she had no lawful status here. So, therefore, when she presents herself, that's it. And yet, this is – there are some considerations here that just don't get taken into account, such as her child and husband. In other words, the fact that she comes back, even though it's illegal for her to do so, and has a relationship, you know, as a husband and a child here, could that in terms of her constitutional rights? No, Your Honor. Going back to Supreme Court precedent, you have the Messe decision, you have the Plasencia decision. Yeah. I know. Plasencia. I know. You have the lawful permanent resident who had, you know, at least an entitlement to be in the United States. Right. Because we're talking about a lawful permanent resident. However, Ms. Garcia de Rincon, at the time she presented herself, the only thing she had was a pending visa petition, which was not even approved at the time. Not even was – even if it had been approved, which it wasn't, a visa was not immediately available to her. And we're talking about discretionary relief from removal, under which she doesn't have liberty interest to obtain or pursue. So there are many hurdles for – in this particular case. And given the clear language of the statute, and Avendando Ramirez and the language in Morales Izquierdo, the court doesn't have jurisdiction, first, over the due process claim, and second, even assuming that you have jurisdiction, there is no due process claim because there's no liberty interest. This is an alien who's an arriving alien. And as – and for the reason stated in our 28-day letter and in our brief, we argue that she has not even established prejudice. And one last point. There is no suspension clause argument in the brief. This is the first time that I've heard the other side make a suspension clause argument. If the court wants to address suspension clause, I – we can brief the issue, but it's the first time, Your Honor, that it has been brought to my attention. Roberts. Understood. Okay. No further? If the Court doesn't have any further questions? Thank you. Excuse me. The district court was careful to note that the permanent resident, husband, and child gave this woman sufficient ties to afford her more rights than simply an arriving alien and – without these ties. And – There's no question that the facts of this case are troubling. And that's what troubled the district court, and that's why he, I think, was – you know, wanted us to – he, as he said in his opinion, wanted us to look carefully at it to see whether there was a – any hope for her. But – and that's what we're doing. But what makes the facts of this case troubling is that words were basically given her to say, and there can be no allowance by our notion of due process to require somebody to sign off to those words to stay detained or implicitly seem like that's what they have to do. That raises a question we talked about earlier about whether the due process clause applies to an alien seeking admission who doesn't have lawful status and – you know, under the circumstances. Had she not left, she would have been able to get V status and adjust status. At this point in time, though, we're not asking for adjustment of status, and the prejudice in mind has nothing to do with adjustment of status. At this point in time, we're asking her to be able to consular process in January of 2014, but for a factual finding which was coerced from her that she claims she had no understood – no understanding as to what was being done with her and what she was signing off on. And I only have to ask this Court, can our laws permit her to forever remain outside the United States as a result of such government-coerced activity? Thus she alleges. Okay. I think we understand your argument. Thank you. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Hassan v. Shurta.
judges: Schroeder, Walker , N.R. Smith